## HANNA v. MORROW.

1. INJUNCTION; *Against Judgments*: *Diligence, &c.*
   To entitle a party to enjoin a judgment he must show, not only that the judgment was unjust, but that it was not the result of any inattention or negligence on his part. That he omitted to defend the suit in consequence of being mislead by the clerk of the court as to its character, was inexcusable negligence.

2. HOMESTEAD; *When attaches: Lien.*
   *Quere:* Can a valid lien fixed upon land before it acquires the character of a homestead, be displaced or impaired by the subsequent occupation of the land by the debtor as a homestead?

3. JURISDICTION OF J. P.; *Judgment beyond, incurable.*
   A judgment before a Justice of the Peace upon a claim above his jurisdiction is void and can not be cured, or set off against another judgment.

APPEAL from *Washington* Circuit Court in Chancery. Hon. A. B. GREENWOOD, Special Judge.

*B. R. Davidson* for appellant.

1. The complaint shows a good defense to the sale of the land. Hanna was mislead by the information received from the clerk and prevented from defending. The clerk is the custodian of the records and papers. No copy of a complaint is served on a defendant. Appellant was guilty of no laches and entitled to relief. *Pom. Eq. per. Sec.* 856; 11 *Ark.*, 443; 4 *Cush., Miss.,* 341; 3 *Robertson,* 637; 7 *Cranch,* 335–6; 51 *N. H.,* 385; 40 *Id.,* 441; 14 *Ill.,* 375; 22 *Id.,* 161; 28 *Id.,* 479; *Story Eq. Jur., Sec.,* 110.

2. The summons was not in compliance with law. It was not to answer a *complaint in equity,* nor to answer in 20 days, &c. *Gantt's Dig., Sec.* 4504–7. It did not authorize the judgment.

*L. Gregg* for appellee.

Where a lien once attaches it cannot be defeated by a claim of homestead. *Thompson on Homesteads, &c., Sec.* 317 *and note; Ib., Sec.,* 715, 244–6 *and* 260, 648, &c.

Appellant shows an utter want of legal diligence; he employed no attorney, neglected to attend court, made no inquiry of opposing party or counsel, did not look at the docket, &c., &c., and alleges no fault or fraud on appellee. Hence is entitled to no relief. *Herman on Ex., p.,* 618; *Hilliard on New Trials p.* 521-2 *and note; Ib., p.* 529, 549 *and* 550; *Freeman on Judg., Sec.,* 115; *High on Inj., Sec.* 85, *p.* 55, *Secs.* 86, 99, 128, 136 *and* 165-6; *Story Eq. Jur., Secs.* 887-8; 3 *Cain,* 132; 29 *Cal.,* 422; 16 *Id.,* 377; 71 *N. C.,* 232; 64 *N. C.,* 624; 9 *Gratt.,* 40; 26 *Geo.,* 485; 5 *Ark.,* 185-6.

SMITH, J. Hanna, in his bill for injunction, filed in 1880, alleged that Morrow had, in 1876, recovered a de-

Hanna v. Morrow.

cree in Chancery against him for $222 and costs; that in 1877 an execution had been levied on one hundred and thirty acres of land, which constituted his homestead, and he had accordingly filed a schedule, claiming the land as exempt from execution and had procured a supersedeas to be issued; that afterwards Morrow had filed his petition to quash said supersedeas and subject the land to the payment of his debt; that the said judgment debtor was duly summoned to answer this petition and had applied to the clerk of the court for a sight of said petition, but was informed that the only suit pending against him in that court was a proceeding by *sciere facias* to revive said judgment; that he believed and relied on these representations of the clerk, in consequence of which he made no defence, and judgment by default, was rendered against him, and the sheriff is now about to sell his lands; that the plaintiff is a married man and head of a family and has resided on the lands for two or three years next before the filing of his bill, and the lands are in the county and worth not exceeding $2,500; that he had filed a schedule of all his property and demanded a supersedeas, but the clerk had refused to issue it.

The bill further alleged that Hanna had a judgment against Morrow for $300, which he exhibited and offered to set off against the judgment sought to be enjoined.

To this bill a demurrer was sustained and the plaintiff declining to plead further was dismissed out of court.

Only two questions properly arise upon the record.

It was specified, as one of the causes of demurrer, that the bill showed no sufficient excuse for not answering Morrow's petition to quash the supersedeas granted by the clerk.

A bill seeking relief of this nature is watched with extreme jealousy and the grounds upon which the interfer-

1. Injunctions against judgments. Diligence, &c.

ence will be allowed are somewhat narrow and restricted. The general principle upon which the relief is founded is stated by Lord Redesdale in *Bateman v. Willoe*, 1 *Sch. & Lef.*, 204: "It is not sufficient to show that injustice has been done, but that it has been done under circumstances which authorize the court to interfere. Because, if a matter has been already investigated in a court of justice, according to the common and ordinary rules of investigation, a court of equity can not take on itself to enter into it again." Hence, it must appear that the judgment complained of was not the result of any inattention or negligence on the part of the person aggrieved and he must show a clear case of diligence to entitle himself to an injunction. *High on Injunctions Secs.* 85, 86, 99, 128, 161, 165; *Dugan v. Cureton*, 1 *Ark.*, 31; *Andrews v. Fenter Ib.*, 186; *Watson v. Palmer*, 5 *Id.*, 501; *Bently v. Dillard*, 6 *Id.*, 79; *Hempstead v. Watkins, Id.*, 317; *Conway v. Ellison*, 14 *Id.*, 360; *Clapton v. Carluss*, 42 *Id.*

The plaintiff here was guilty of inexcusable neglect. Every suitor should personally attend to his case, or be represented by an attorney.

After Hanna had been duly served with process, he neglected to attend court, made no inquiry of the opposite party or his counsel, and did not examine the docket for the case, but suffered himself to be lulled into security by loose declarations of the clerk to the effect that no such suit was pending. No fault or fraud is attributed to the adverse litigant or his solicitor. And solemn judgments cannot be vacated where there is an utter absence of legal diligence. *Freeman on Judgments, Sec.* 115; *Gardenhire v. Vinson*, 39 *Ark.*, 270.

These considerations relieve us of the necessity of determining whether Hanna had any meritorious defence against Morrow's petition to vacate the supersedeas

theretofore issued, staying the sale of the lands. It appears from the bill that Hanna was not occupying these lands at the date of the rendition of the judgment, but that after the judgment lien had attached and before the levy of the execution, he had established his residence upon the lands. Whether a valid lien fixed upon land before it acquires the character of a homestead, can be displaced or impaired by a subsequent occupation of the land by the debtor as a homestead, is a point upon which the following authorities may be profitably consulted: *Thompson on Homesteads and Exemptions, Sec.* 317 *and cases cited; Moore v. Granger,* 30 *Ark.,* 574; *Patrick v. Baxter,* 49 *Id.; Constitution of* 1874, *Art. IX, Sec.* 4; *Tumlinson v. Swinney,* 22 *Ark.,* 400; *Norris v. Kidd,* 28 *Id.,* 485.

Then to the bill, considered in its aspect of enforcing the plaintiff's right to set off his judgment against Morrow's judgment, there is an insuperable objection to relief. The plaintiff sued before a Justice of the Peace, since the adoption of the present Constitution, for $439, and recovered judgment for the full amount of his claim. He afterwards entered a remittitur for the $139 in excess of the magistrate's jurisdiction. But his judgment was not a mere irregularity; it was a nullity, of no avail, or effect whatever, and incapable of being cured.

Decree affrmed.